IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1730-WJM-MJW

ANASTASIA VERCOS,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF EL PASO,
JIM REID,
R.C. SMITH, and
JERRY CORDOVA,

    Defendants.

---

## ORDER GRANTING MOTION TO DISMISS

---

In this wrongful termination case, Plaintiff Anastasia Vercos alleges she was terminated from employment with El Paso County, Colorado in retaliation for reporting misuse of federal funds. She brings claims against Defendants, the Board of County Commissioners of El Paso County, Jim Reid, R.C. Smith, and Jerry Cordova (together, "Defendants"), including a claim for violation of her First Amendment rights, pursuant to 42 U.S.C. § 1983, and claims under Colorado law for wrongful termination in violation of public policy and for intentional interference with contractual rights. (*See* ECF No. 23.) Now before the Court is Defendants' Motion to Dismiss. (ECF No. 24.) As explained below, Plaintiff's First Amendment claim fails because her speech was made pursuant to her official duties. Therefore, Defendants' Motion is granted.

### I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for

"failure to state a claim upon which relief can be granted." The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

However, to survive a motion to dismiss, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief. 'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545 & 556). Plaintiff must plead more than merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*

## II. FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint (ECF No. 23) and assumed to be true.

Plaintiff began working for El Paso County (the "County") in September 2015. She was hired, along with Defendant Jerry Cordova ("Cordova") to administer a federal grant related to fire and flood mitigation on behalf of the El Paso County Regional Watershed Collaborative (the "Collaborative"). (ECF No. 23 ¶ 2.) Cordova is the program coordinator of the program for which Plaintiff worked. (*Id.* ¶ 5.) Plaintiff was hired by Defendant Reid ("Reid"), the executive director of the County's public services department, through which the federal grant monies were channeled. (*Id.* ¶¶ 3, 6.) While Plaintiff worked at the County, she and Cordova were the only two employees paid under the grant. (*Id.*)

Under the grant's terms, both Plaintiff and Cordova were required to work 40 hours per week on the grant project, and were not allowed to work on other matters during those hours. (*Id.* ¶ 7.) Plaintiff and Cordova were required by the "person in charge of timekeeping for the [C]ounty" to "confirm that they worked 40 hours/week on grant-related matters." (*Id.* ¶ 8.) In October and November 2015, Plaintiff noticed Cordova "was mis-reporting his time on the grant," and "that although he was paid for working a 40-hour week, by November [2015] he was working only approximately three days per week on the grant," while at other times Reid allowed him to work on unrelated matters. (*Id.*)

Plaintiff reported this alleged "wage theft of federal funds" to two members of the Collaborative's leadership committee and to the County's human resources department, where she filed a formal complaint. (*Id.* ¶¶ 9–10.)Cordova met with human resources staff regarding this complaint on December 1, 2015. (*Id.* ¶ 11.)

3

Plaintiff was terminated two weeks later, on December 14, 2015, via a document signed by Reid, citing "not fulfilling the expectations of the position and not completing the initial review period." (*Id.* ¶¶ 11, 12.) Plaintiff alleges the stated basis for her termination was "not true," and that others involved in the grant, including members of the leadership committee, had complimented her job performance. (*Id.* ¶ 13.) She alleges Cordova knew Plaintiff's "whistleblowing" could harm his employment. (*Id.* ¶ 15.) She also alleges that Cordova was a friend and office-mate of another member of the leadership committee, Defendant Smith ("Smith") (*id.* ¶¶ 4, 16), that Smith wanted to protect Cordova, that Reid "wanted to terminate [Plaintiff] to protect his own employment," and that Cordova, Smith, and Reid therefore conspired to terminate her in retaliation for reporting Cordova's misuse of hours or "wage theft." (*Id.* ¶¶ 10, 16).

### III. ANALYSIS

**A. First Amendment Claim**

Plaintiff's only federal claim is brought under 42 U.S.C. § 1983, alleging violation of her First Amendment right "to speak out on matters of public concern." (*Id.* ¶¶ 17–23.)

1. Relevant Law

Claims for retaliatory discharge of a public employee in violation of the First Amendment are evaluated under the five steps of the "*Garcetti/Pickering*" test:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a

> motivating factor in the adverse employment action; and
> (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009) (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). "The first three steps . . . are issues of law to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010); *Dixon*, 553 F.3d at 1302. Thus, "if in answering any of the [first] three inquiries the district court concludes the speech is not protected, the analysis ends." *Holub v. Gdowski*, 802 F.3d 1149, 1154 n.2 (10th Cir. 2015).

The Supreme Court made the first consideration a threshold issue in *Garcetti*: "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

In determining whether an employee's speech is protected, neither the fact that speech was made "inside [the] office" or "at work," nor that the speech concerned plaintiff's employment is dispositive. *Id.* at 420–21. "[S]peech may be entitled to constitutional protection even when it is made at work about work." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d. 708, 714 (10th Cir. 2010). Instead, the "controlling factor" is whether the employee's statements "were made pursuant to his duties." *Garcetti*,

547 U.S. at 421; *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014) ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen —speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."). *Garcetti*, however, had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate," since the issue was undisputed. *Id.* at 424. *Garcetti* noted only that "listing of a given task in an employee's written job description is neither necessary nor sufficient," and that "[t]he proper inquiry is a practical one." *Id.* at 424–25.

Since *Garcetti*, however, "[t]he Tenth Circuit's decisions addressing the first step of the *Garcetti/Pickering* analysis have taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Rohrbough*, 596 F.3d at 746. Consistent with the "practical" inquiry directed by *Garcetti*, these cases "have not developed a set of bright line rules," but take a case-by-case approach, "looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Id.* The Court must "closely examin[e] the specific circumstances" of each case. *Chavez-Rodriguez*, 596 F.3d at 714.

The Tenth Circuit has framed the central inquiry as "whether the speech activity 'stemmed from and [was of] the type . . . that [the employee] was paid to do.'" *Rohrbough*, 596 F.3d at 746 (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794,

6

801 (10th Cir. 2007)). The Tenth Circuit has also held that "both *Lane* and *Garcetti* direct us to focus on whether the employee's speech was within the scope of the employee's usual duties, not whether the speech itself was frequent, usual, or customary," *Holub*, 802 F.3d at 1156, and has "highlighted that the ultimate question . . . is 'whether the employee speaks as a citizen or instead as a government employee,'" *Rohrbough*, 596 F.3d at 746 (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007)).

Examples of the kinds of speech that are generally protected include "communicating with newspapers or legislators or performing some similar activity afforded citizens." *Rohrbough*, 596 F.3d at 746 (citing *Green*, 472 F.3d at 800). A public employee's speech is less likely to be protected "when there is 'no relevant analogue to speech by citizens who are not government employees.'" *Rohrbough*, 596 F.3d at 746 (quoting *Garcetti*, 547 U.S. at 424).

A significant consideration is whether the audience of the employee's speech includes persons outside the employee's organization. "[S]peech directed at an individual or entity outside of an employee's chain of command is often outside of an employee's official duties," while statements that are "directed at an individual or entity within an employee's chain of command [are] often found to be pursuant to . . . official duties." *Rohrbough*, 596 F.3d at 747. However, there is not a "per se rule that speaking outside the chain of command is protected"; rather, this consideration "merely helps inform . . . whether the speech was made pursuant to one's employment." *Chavez-Rodriguez*, 596 F.3d. at 714.

a. *Case Law Examples of Unprotected Speech*

Applying the principles above, the Tenth Circuit has in several cases held that public employees speaking only within their work organizations spoke pursuant to official duties, even when seeking to redress significant problems. For example, in *Rohrbough*, where a hospital's transplant coordinator believed staffing problems were undermining patient care and suspected cover-up of an organ misallocation, the court held she had been speaking "squarely within the scope of her official duties" by communicating these concerns to other hospital employees. 596 F.3d at 748.

Similarly, in *Holub*, a school district's internal auditor repeatedly raised budget concerns to the superintendent and school board, who investigated, found the concerns "unfounded," and eventually terminated her for "unwillingness and apparent inability to move past" this issue. 802 F.3d at 1153. The court held her communications, including with board members outside normal meetings, "while not customary, were made pursuant to her ordinary duties," and were therefore not protected speech. *Id.* at 1156.

Going further, in both *Green* and *Chavez-Rodriguez*, the Tenth Circuit held that speech directed outside the employee's organization may still not be protected where the content and context showed the speech was made within the employee's duties. In *Green,* when supervisors of a county drug lab were unresponsive to a lab technician's concerns about false positive results and lack of confirmation testing, the technician went to third parties to arrange a confirmation test. 472 F.3d at 796. Despite having communicated outside the organization, without authorization, and "to focus attention on apparently misguided actions or improper situations," the court held the technician

"did not speak or act in her capacity as a citizen, but as a government employee," *id.* at 801, concluding it had been within her duties to ensure test accuracy and communicate with third parties regarding testing, and noting "even if not explicitly required as part of her day-to-day job responsibilities, her activities stemmed from and were the type of activities that she was paid to do," *id.* at 800–01.

Likewise, in *Chavez-Rodriguez*, the municipal director of Senior Services raised budget concerns first internally, then with the Speaker of the New Mexico House of Representatives, who was also a personal friend. 596 F.3d at 710–11. The Tenth Circuit held this speech was nevertheless "pursuant to her employment duties." *Id.* at 714. The court considered the context of plaintiff's speech—-a conversation at a banquet "sponsored by" plaintiff's office, "during work hours," and at which she and the Speaker were both "present . . . by virtue of their governmental roles." *Id.* The court also held that the content—a discussion of budget and policy—"was more akin to a work discussion . . . than small talk." *Id.*

        b.    *Case Law Examples of Protected Speech*

By contrast, in cases where the Tenth Circuit has held speech was protected, it typically was made to individuals plainly outside the employees' normal reporting channels, such as law enforcement, and/or was related to topics for which the employee did not have responsibility.

In *Casey v. West Las Vegas Independent School District*, 473 F.3d 1323, 1332 (10th Cir. 2007), the court held a school superintendent's reporting improprieties in the Head Start program to the school board "fulfill[ed] her responsibility of advising the

9

Board." *Id.* at 1329–30, 1332. Likewise, the plaintiff's reporting to federal Head Start officials fell within her duties for the "sound administration of federal funds," and "to report to federal authorities." *Id.* at 1331. However, the court distinguished the superintendent's speech to the state Attorney General regarding the board's non-compliance with open meetings law. *Id.* at 1332. This speech was protected since it was directed to "outside authorities" and concerned a matter for which plaintiff had not been given responsibility. *Id.*

Likewise, in *Thomas v. City of Blanchard*, 548 F.3d 1317 (10th Cir. 2008), the court followed *Casey*, holding a city code inspector who "went beyond complaining to his supervisors" to report a fraudulent occupancy certificate to law enforcement, was protected by the First Amendment because his "speech ceased to be merely 'pursuant to his official duties and became the speech of a concerned citizen." *Id.* at 1325. Similarly in *Reinhardt v. Albuquerque Public Schools Board*, 595 F.3d 1126 (10th Cir. 2010), a speech-language pathologist who reported alleged non-compliance with special education law was held to have made protected speech when, after internal reports were ineffective, she consulted an attorney and filed an IDEA[1] complaint with the state department of education. Since the plaintiff "was not hired to ensure IDEA compliance," her external complaint was "not pursuant to official duties, but rather was the speech of a private citizen." *Id.* at 1136–37.

---

[1] Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*

## 2. Plaintiff's Speech Was Pursuant to Her Official Duties

In light of this controlling case law, the Court concludes that the facts of Plaintiff's allegations, even taken as true, do not reflect speech as a private citizen, as in *Casey, Thomas, or Reinhardt*, but instead was unprotected speech made pursuant to official duties, similarly to *Holub, Rohrbough, Green, and Chavez-Rodriguez*.[2]

The Court first identifies what speech is at issue. *See Green*, 472 F.3d at 799. Plaintiff reported the alleged misuse of Cordova's time first to members of the Collaborative's leadership committee, and then to County human resources staff, including filing "a formal compliant with the county's human resources department." (ECF No. 23 ¶¶ 9, 10.)

Turning next to describe the scope of Plaintiff's official duties, Plaintiff's Complaint does not state her job title or describe her day-to-day responsibilities, but it does allege that "[s]he was hired, along with her team member . . . Cordova, to administer [the] federal grant," "on behalf of" the Collaborative. (*Id.* ¶ 2.) Although few organizational details are provided, the Collaborative had a "leadership committee" of approximately 9 members, Cordova served as the "program coordinator" (*id.* ¶ 5), and he and Plaintiff were the only two County employees paid under the grant (*id.* ¶¶ 4, 6). In addition, Both Plaintiff and Cordova were required to "confirm that they worked 40 hours/week on grant-project matters." (*Id.* ¶ 8.)

The parties principally dispute whether this last allegation regarding timekeeping

---

[2] Unhelpfully, neither party cites any of the relevant case law other than *Garcetti* (*see* ECF No. 24 at 5–6; ECF No. 29 at 3–4; ECF No. 30 at 2–3), but the Court finds this body of law is both controlling and dispositive of Plaintiff's First Amendment claim.

shows Plaintiff had a duty to report how Cordova was spending his time, or only to report her own hours. The Court does not give dispositive status to this allegation, but determines, considering the circumstances as a whole, that Plaintiff has alleged only that she spoke pursuant to her official duties.

Significantly, Plaintiff's speech was only "directed . . . within [her] chain of command," strongly reflecting speech made pursuant to official duties. *See Rohrbough*, 596 F.3d at 747. Even if the Collaborative might be considered external to the County, Plaintiff was hired to administer the grant "on behalf of the [Collaborative]" (ECF No. 23 ¶ 2), so reporting to Collaborative leaders was, at most, analogous to the external reports to federal officials that were made in *Casey*, where the plaintiff was responsible for administering a federally-funded program. *See* 473 F.3d at 1330–31. In addition, Plaintiff's first reports were to Collaborative leaders, and then to human resources, showing she treated all of these individuals as within her organization. Tenth Circuit precedent, including *Rohrbough* and *Holub*, reflects that even high-level, persistent reporting of significant suspected wrongdoing is likely unprotected when it is only raised internally.

In addition, the Court views the filing of a "formal complaint" with a human resources department as more consistent with raising an "employee grievance" than with speech made as a citizen. Non-employee citizens do not typically file internal "HR" complaints, and the Court sees "no relevant analogue to speech by citizens" for this conduct. See *Rohrbough*, 596 F.3d at 746. Viewing this as "communications between and among government employees and their superiors in the course of official

12

business," the Court must avoid "displacement of managerial discretion by judicial supervision." *Rohrbough*, 596 F.3d at 747 (citing *Garcetti*, 547 U.S. at 423). Thus, the context of Plaintiff's speech reflects statements made as an employee, not a citizen.

As to the content of Plaintiff's speech, Plaintiff reported the mis-use and mis-reporting of time by her sole "team member" where both employees were required to work and report 40 hours spent per week on grant-related work. The Court concludes this reporting fell within "the type of activit[y] that [plaintiff] was paid to do." *Chavez-Rodriguez*, 596 F.3d at 713 (quoting *Brammer-Hoelter*, 492 F.3d at 1203).

Plaintiff argues she was not charged with reporting on Cordova's time or being his "overseer." (*See* ECF No. 29 at 3–4.) The Court does not read Plaintiff's allegations to show, necessarily, that she had an independent duty to report to federal funders, as in *Casey*; held executive responsibilities, as in *Chavez-Rodriguez*; or had independent financial reporting obligations, as in *Holub*. However, Plaintiff shared at least some responsibility to "administer" the federal grant. (ECF No. 23 ¶ 2.) She was also authorized and able to speak directly to the Collaborative's leadership. (*Id.* ¶ 9.) Reporting on Cordova did not need to be included in her formal job description, *Reinhardt*, 595 F.3d at 1135, nor "explicitly required as part of [her] day-to-day job," *Rohrbough*, 596 F.3d at 747, nor a "frequent, usual, or customary" part of her job, *Holub*, 802 F.3d at 1156, to still be fairly viewed as a part of her official and ordinary job duties. The fact that Plaintiff was not ordinarily required to monitor Cordova's timekeeping hardly implies that once she suspected, in her words, "wage theft," she was acting only as a private citizen when she reported it.

In sum, given the facts pled by Plaintiff, and applying Tenth Circuit precedent including *Green*, *Chavez-Rodriguez*, *Holub*, and *Rohrbough*, the Court concludes that Plaintiff's reports of alleged misuse of Cordova's time "reasonably contribute[d] to or facilitate[d] the performance of [plaintiff's] official dut[ies]." *Chavez-Rodriguez*, 596 F.3d at 713. Put another way, after engaging in the case-specific analysis required under *Garcetti*, the Court concludes that once Plaintiff suspected "wage theft" by an immediate co-worker in the program on which she worked, she was acting pursuant to her official and ordinary duties when she reported it to superiors within her organization.

Finally, the Court notes that while Plaintiff's Amended Complaint states summarily that it "was not part of her normal job duties to report" alleged "theft" of federal grant monies (ECF No. 23 ¶ 17), this pleading is not by itself sufficient under Rule 12(b)(6). The Court must "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Plaintiff cannot simply plead "labels and conclusions," *Robbins*, 519 F.3d at 1247, and "[t]hreadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice," *Wasatch Equal. v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016). Plaintiff must instead put forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Where the only reasonable inferences to be drawn from the facts pled in the Complaint defeat Plaintiff's claim for liability, the Complaint should be dismissed. *See id.*; *Vogt v. City of Hays, Kansas*, 844 F.3d 1235, 138 (10th Cir. 2017).

Here, Plaintiff failed to plead almost any facts establishing the scope of her official duties; nevertheless, the facts that she has pled contradict her assertion that it was not within her "normal job duties" to report the alleged "theft" of federal grant monies that she was one of two individuals hired to administer, and from which she was paid. Moreover, whether Plaintiff's speech was constitutionally protected is a question of law. *Holub*, 802 F.3d at 1154 n.2. Since the Court concludes that the facts Plaintiff has pled show her speech was made pursuant to her official duties, her First Amendment claim fails and the Court need not address any further issues. *Id.* ("if the court determines . . . the employee spoke pursuant to his or her official duties . . . the analysis ends"); *Petrella v. Brownback*, 787 F.3d 1242, 1268 (10th Cir. 2015) ("If an issue of law precludes relief, dismissal is appropriate."). And, since the Court finds no amendment would cure this defect, dismissal with prejudice is appropriate. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

**B.     State Law Claims**

Having dismissed Plaintiff's only federal claim, the Court also dismisses Plaintiff's claims under Colorado law, without addressing their merits, including her claims for wrongful termination, for interference with contract, and—to the extent such a claim has been pled—for civil conspiracy. 28 U.S.C. § 1367(c)(3); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").[3]

---

[3] Plaintiff expressly has *not* brought a federal claim for conspiracy to interfere with civil rights, 42 U.S.C. § 1985(3), only a state law claim for civil conspiracy. (*See* ECF No. 29 at 6.)

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Jury Demand (ECF No. 24) is GRANTED;

2. Plaintiff's Claim brought pursuant to 42 U.S.C. § 1983 for violation of her rights under the First Amendment is DISMISSED WITH PREJUDICE;

3. The Court DECLINES to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims and those claims are DISMISSED WITHOUT PREJUDICE; and,

4. The Clerk shall terminate this case. The parties shall bear their own costs and attorney's fees.

Dated this 25th day of April, 2017.

BY THE COURT:

_____
William J. Martínez
United States District Judge